## Case No. 7,981.

### The LADY ELLEN.

### The NORWALK.

[4 Ben. 340.] [1]

District Court, S. D. New York. Nov., 1870.

COLLISION IN NEW YORK HARBOR—STEAMBOAT AND SCHOONER.

1. A collision occurred in New York harbor, in the evening, between a steamboat and a schooner. The schooner, with a free wind from north of west, was going down the harbor, and the steamboat was coming up. The schooner's stem struck the port side of the steamer, angling aft, at an angle of about forty-five degrees. It was claimed, on behalf of the steamer, that the schooner changed her course, by starboarding her helm, when the vessels were a few hundred feet apart, whereupon the helm of the steamer was put to port. The schooner, on her part, claimed that her course was not altered. *Held*, that, on the evidence, the schooner made no change of her course.

2. As it was admitted that the steamboat ported her helm, the conclusion, that the schooner did not starboard, established that it was the porting of the steamboat which caused the collision, and, as the case was not one of inevitable accident, the steamboat was solely responsible for the collision.

In admiralty.

Beebe, Donohue & Cooke, for the steamboat.
E. H. Owen, for the schooner.

BLATCHFORD, District Judge. These are cross-libels. growing out of a collision, which occurred shortly before eight o'clock, p. m., on the 12th of August, 1870, between the schooner Lady Ellen and the side-wheel steamboat Norwalk, in the harbor of New York, between Governor's Island and the Narrows. The schooner was going to sea, by the way of the Narrows and Sandy Hook. The steamboat was on a trip from Coney Island, by the way of the Narrows, to the city of New York. The libellants in the first suit, as owners of the steamboat, claims $8,000 damages. The libellants in the second suit, as owners of the schooner, claim $1,500 damages. The stem of the schooner struck the port side of the steamboat, just forward of her paddle-box, in a direction angling at an angle of about forty-five degrees toward the stern of the steamboat. The tide was flood. and the schooner was under strong sail. the wind being to the north of west. and she having it free, and on her starboard side.

The libel on the part of the steamboat alleges, that those on the steamboat observed

1 [Reported by Robert D. Benedict. Esq., and here reprinted by permission.]

the schooner at the distance of about half a mile, on a parallel course with the course of the steamboat, about two points off the port bow of the steamboat, and on a course which, if continued, would have cleared the steamboat, on the port side of the steamboat, from 200 to 300 feet; that the vessels continued to approach each other, on such courses, until they were within a distance from each other of from 200 to 300 feet, when the helm of the schooner was suddenly starboarded, and she was permitted to fall off to the east of south; that the schooner, when she so starboarded, was so near to the steamboat that a collision was unavoidable, the only thing remaining for the steamboat to do being to port her wheel, and whistle to the schooner, and hail the schooner to port, which the schooner might have done, but did not do; that the weather was cloudy, and the night somewhat dark, but the steamboat could readily have been seen by those on the schooner, at the distance of a quarter of a mile; that the lights of the steamer were lit and burning brightly; that an alarm whistle was blown by the steamboat when the schooner so changed her course; that the schooner had no proper lookout; and that all the crew of the schooner left her before the collision, and while the same could have been avoided by those on the schooner. The libel avers that the collision was caused wholly by the fault of those on the schooner: (1) In not having a competent lookout. (2) In not keeping her course, as it was her duty to do, in meeting a steamer—the change in the course of the steamboat, by putting her helm hard a-port, having been such as would have rendered a collision impossible if the schooner had kept her course, and that, if the schooner made any change, she should have put her helm to port, so as to pass on the port side of the steamboat. (3) In the fact that the crew of the schooner left her before the collision, and while it might have been avoided.

The answer on the part of the schooner avers, that the schooner was heading about south; that the schooner was seen by those on the steamboat when a mile or more distant, the schooner heading in nearly an opposite direction to the steamboat, and on nearly a parallel course, which, if continued, would have carried the steamboat a safe distance from the schooner, on the starboard side of the schooner; that the schooner was kept steadily on her course; that her wheel was not starboarded; that when the steamboat had approached to within about 200 yards of the schooner, the helm of the steamboat was suddenly put hard a-port, and she swung off, on a rank sheer of four points or more, to the eastward, which brought her directly under the bows of the schooner, with her port side towards the schooner, and into the position she was in when the schooner struck her: and that the steamboat had no competent lookout. The answer also avers,

that, if the schooner did starboard, she starboarded when the vessels were more than 200 yards apart, and that such movement, if made, was observed by the pilot of the steamboat a sufficient time and distance off to have enabled him, with reasonable and proper efforts, to keep away from the schooner, and so avoid the collision; that he ought to have then starboarded his helm, and slowed his boat, but that he put his wheel hard to port, and ran across the bows of the schooner, and into her way; that, if the helm of the steamboat had been put to starboard, and she had swung off as far to port as she did to starboard by porting, she would have cleared the schooner, and would have passed a safe distance under her stern; and that, even if the wheel of the steamboat had been kept amidships, the schooner would have crossed the bows of the steamboat in safety. The answer also avers, that the schooner had all her lights properly set and burning; that the steamboat was seen by the master of the schooner, who had her wheel, when a mile and a half or more distant; that he observed her continually thereafter; that the want of a lookout on the schooner did not cause or contribute to the collision; and that the want of a lookout on the steamboat caused or tended to cause the improper porting of her wheel, and the collision which ensued.

The libel and the answer, in the suit brought by the owners of the schooner, present substantially the same allegations as those contained in the pleadings in the suit brought by the owners of the steamboat.

The determination of these cases turns upon a single point. It is admitted that the steamboat ported her helm, but it is contended that she did not do so until after she had observed a starboarding by the schooner. The starboarding by the schooner is alleged as the cause of the porting by the steamboat. The weight of testimony is, that the schooner did not starboard, but kept her course all the time, from the time the steamboat was first observed by her; and that the steamboat was observed in season from the schooner, and kept in view, so that there was an inducement for the schooner to keep her course. As the schooner kept her course, it follows that the steamboat mistook the course of the schooner, and got into the way of the schooner. It being admitted that the steamboat ported, the conclusion that the schooner did not starboard establishes that it was the porting of the steamboat, as and when she did, that brought her into a position where she was struck by the schooner. No want of a lookout, contributing to the collision, on the part of the schooner, is shown, nor is it established that any of the crew of the schooner left her before the collision. The steamboat does not show any fault on the part of the schooner, which made it impossible for the steamboat to avoid her. This being so, and the collision not being one which can fall under the head of inevitable

accident, it follows that the steamboat must be held to have been exclusively responsible for the collision. New York, etc., Steamship Co. v. Rumball. 21 How. [62 U. S.] 372, 385; The Carroll, 8 Wall. [75 U. S.] 302, 304.

There must be a decree dismissing the libel against the schooner, with costs. In the suit against the steamboat, there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by them.